UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES GARRY JAVIZIAN,
and PATRICIA JAVIZIAN,

        Plaintiffs,

v

WAYNE COUNTY, WAYNE COUNTY
MEDICAL EXAMINER, CARL J.
SCHMIDT, MD jointly and severally,

        Defendants.
_____/

Case Number:

HON:

SCHWARTZ LAW FIRM, P.C.
By:   Mary Mahoney (P41568)
        David Eagles (P79129)
Attorneys for Plaintiffs
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
(248) 553-9107 Facsimile
mmahoney@schwartzlawfirmpc.com

_____/

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

      NOW COME Plaintiffs, Charles Garry Javizian and Patricia Javizian, by and through their attorneys, Schwartz Law Firm, P.C., and for their Complaint state:

      1.    This action arises under 42 USC §1983. Jurisdiction is conferred by 28 USC §1331, §1343(3), (4).

## PARTIES AND VENUE

2. Plaintiffs, Charles Garry Javizian ("Charles") and Patricia Javizian ("Patricia") and collectively as the "Javizians" are the bereft parents of Gregory Charles Javizian ("Gregory"), now deceased. The Javizians reside in Royal Oak, Michigan, Oakland County.

3. The Javizians are the "next of kin" with the right to possession of the body of their son, Gregory Charles Javizian, now deceased, for burial.

4. Defendant, Wayne County, is a governmental subdivision of the State of Michigan, geographically situated within the Eastern District of Michigan.

5. Defendant, Wayne County Medical Examiner ("ME"), is a public body organized under the laws of the State of Michigan and is geographically situated within the Eastern District of Michigan.

6. Defendant, Carl J. Schmidt, M.D. ("Schmidt"), was at all material times acting as the Chief Medical Examiner for Defendant, Wayne County.

7. Defendant, William Kasper ("Kasper), was at all material times employed by the ME's office as its Chief Investigator.

8. The Javizians cause of action arose in the City of Detroit, County of Wayne, State of Michigan.

9. The amount in controversy exceeds $25,000.00 and is otherwise within the jurisdiction of this court.

## FACTUAL ALLEGATIONS

10. Gregory was the only son of Charles and Patricia. Unable to have their own children, they waited a long time for a child to become available for adoption, making Gregory even more precious to them.

11. As a child, Gregory was involved in hockey, swimming and water polo. He volunteered at his church. He loved people, stepping in to help a neighbor, friend, or family members. Gregory especially enjoyed spending time with his family. His parents could not have been more proud of him.

12. Although Gregory battled drug addiction as an adult, making several unsuccessful attempts to get clean, he remained close to his family – even his ailing grandmother, whom he often visited in the nursing home.

13. Gregory managed to maintain regular contact with his parents, even when he was actively using; he knew that his parents would worry if he did not check in with them. He loved his parents, and knew that they loved him, despite the troubled life he had lived.

14. The month before he died, Gregory made a point to visit his parents on Father's Day. It was the last time they ever saw their son alive.

15. On or about July 11, 2017, at the age of 32, Gregory died alone, in a field somewhere within the City of Detroit.

16. Present on Gregory's body at the time of death was his wallet, which contained his driver's license and social security card.

17. A medic at the scene conducted a medical evaluation of Gregory's body and pronounced death by drug overdose. As the medic had declared the cause of death, there was no need for an autopsy. Nevertheless, Detroit Police Officers released the body to the ME.

18. On July 12, 2017, <u>before even attempting to identify the body</u>, Defendants Wayne County, ME, Schmidt, and Avneesh Gupta, M.D. ("Gupta") unlawfully and intentionally mutilated the Gregory's body, without consent, by: opening the body with thoraco-abdominal and posterior coronal scalp incisions, removing and dissecting organs, photographing the body and its parts, and suturing the body closed.

19. Given the circumstances under which Gregory was found (needle in arm and cap in mouth), and the obvious manner of death by drug overdose, it was unnecessary for Gupta to perform an autopsy or to remove the organs for the purpose of conducting a drug test.

20. Gupta's performance of an autopsy and removal of said organs without the consent of the Javizians when the Javizians could have been located by several means prior to autopsy constitutes an unlawful and intentional mutilation of Gregory's corpse, in derogation of the Javizians' right to be notified when possible

prior to the performance of an autopsy and to the remains of their deceased son, their only child.

21. At the time the autopsy was performed, the Javizians did not even know that their son was dead because neither Wayne County, the ME, or Gupta had made ANY attempt to identify the body for purposes of notifying the next of kin, as required by statute. MCL 52.205(4) & (5).

22. Defendants had the ability to fingerprint Gregory for the purpose of identifying his body since Gregory had a criminal record and his fingerprints are recorded.

23. Defendants did not fingerprint Gregory. Had they done so, they would have found his information in LEIN.

24. On July 12, 2018, Gupta signed the death certificate, noting the cause of death as fentanyl and heroin toxicity, even though the toxicology report was not completed until July 23, 2017.

25. On July 14, 2018, after not hearing from Gregory for a few weeks, the Javizians became worried and attempted to file a missing person's report with the Detroit Police Department, 12th Precinct.

26. An officer of the Detroit Police Department told the Javizians that they could not file a missing person's report because their son was not living in their household.

5

27. The Javizians continued to worry about what had happened to their son. They did not know that their son was lying on a cold slab in the Wayne County morgue.

28. On August 1, 2017, Patricia Javizian received a telephone call from Investigator Sears ("Sears") of the ME's office, informing her that their office was in possession of her son's body.

29. Gregory's body had been lying in the morgue for 22 days before Sears notified the Javizians.

30. When the Javizians arrived at the morgue, the sight of Gregory's mutilated and decomposed body shook them to the core and caused them severe mental anguish and extreme emotional distress.

31. When Patricia asked Investigator Sears how this could have happened, he said he had been on vacation and when he returned, Gregory "was still there."

32. Sears admitted to Patricia that the ME's office had "dropped the ball."

33. Gregory's body was severely decomposed by the time Defendants notified the Javizians of its location, denying the Javizians the comfort of knowing that their son had been given a peaceful and dignified resting place.

34. It took the funeral director three days to make Gregory's body reasonably presentable for an open casket funeral, further delaying a prompt and proper burial.

35. Despite the funeral director's best efforts to camouflage the extreme state of decomposition, Gregory's body appeared spoiled and disfigured, causing deep humiliation and embarrassment to the Javizians.

36. The actions and omissions of Defendants are the direct and proximate cause of the deep pain and suffering sustained by the Javizians.

37. The day after the funeral, Patricia contacted Chief Investigating Officer Kasper to ask how her son's body could have been left in the morgue for 22 days without being identified.

38. Kasper promised to investigate the matter and to provide a report to Patricia, including information about how her son was finally identified.

39. Kasper never provided the information about how her son was finally identified.

40. Kasper told Patricia that the investigator handling her son's case had to be retrained in death investigation. Kasper did not identify who the "investigator" was.

41. During the month of July or August 2017, the Javizians heard on Channel 4 news that a man had been left at the Wayne County Morgue for one month.

42. Upon information and belief, Defendants Wayne County, ME and Schmidt, and/or Kasper, have a practice, policy, or custom of disregarding their

statutorily mandated duties of making diligent efforts to identify a decedent's body for purposes of notifying the next of kin, including without limitation, failing to track the status of unidentified bodies and failing to assign examiners in a manner that will ensure the timely identification of deceased persons and notify loved ones and relatives.

43. As a direct and proximate result of Defendants' practice, policy and/or customs, the Javizians have been damaged in an amount exceeding $75,000.00.

44. There is no immunity for any of the Defendants, and the Defendants cannot escape liability where, as here, they acted with a lack of good faith, their conduct being wanton or reckless, as any reasonable person would know that emotional distress would result from Defendants' conduct. *Odom v Wayne County*, 482 Mich 459 (2008); *Haverbush v Powelson*, 217 Mich App 228 (1996).

## COUNT I

## **42 USC §1983 – WAYNE COUNTY**

45. Plaintiffs repeat and reallege paragraphs 1 through 44 as though each allegation was stated verbatim.

46. That at all material times, Wayne County, as the governmental entity responsible for oversight of the ME, and/or its appointed Chief Examiner Schmidt, and all its agents and employees, owed the following duties to the Javizians:

    A.    To ensure that employees employed by Wayne County were competent, capable, with the proper licensing and training suitable to their position(s).

    B.    To refrain from hiring or appointing incompetent, incapable, and untrained employees.

    C.    To monitor the performance of the ME and/or Schmidt, to ensure Defendants' compliance with State law.

    D.    To monitor the performance of its employees, including, but not limited to the Chief Medical Examiner, Schmidt, to ensure that same are competent, capable, and in compliance with all State laws governing that Office.

    E.    To adequately supervise the ME and/or its employees including, but not limited to its Chief Medical Examiner Schmidt, to ensure the same is competent, capable, and trained and in compliance with all State laws governing that Office.

47. That at all material times, Wayne County was acting under color of state law as and pursuant to a policy, custom, and/or established procedure of the Defendants.

48. Wayne County's acts and/or omissions violated 42 USC Section 1983, when they deprived the Javizians of a constitutionally protected property right/interest in timely release of their deceased son's body for the purpose of burial.

49. Wayne County's acts and/or omissions were at all times intentional, objectively unreasonable, reckless, and/or grossly negligent, in violation of the Javizians' clearly established rights under the Fourteenth Amendment to the United States Constitution.

9

50. As a direct and proximate result of Wayne County's violation/deprivation of the Javizians' clearly established constitutional rights, the Javizians have endured mental anguish, severe emotional distress, humiliation, embarrassment, and suffering as a result of being denied the comfort of a prompt and proper burial of their only son without unnecessary mutilation of his body.

51. In addition, as a direct and proximate cause of Wayne County's extreme and outrageous, intentional or reckless conduct in failing to meet their duties outlined above, the Javizians have sustained both economic and non-economic damages, counseling expenses, physical pain, suffering, emotional distress, humiliation, embarrassment, depression, loss of enjoyment of life and other damages.

WHEREFORE, Plaintiffs, Charles Garry Javizian and Patricia Javizian, claim compensatory and punitive damages pursuant to 42 USC §1983, together with interest, costs and attorney fees pursuant to 42 USC §1988.

## COUNT II

### 42 USC §1983 AS TO WAYNE COUNTY MEDICAL EXAMINER CARL J. SCHMIDT

52. Plaintiffs repeat and reallege paragraphs 1 through 51 as though each allegation was stated verbatim.

53. At all times material times herein, ME was responsible for the collection, supervision, and disposition of deceased bodies found within Wayne County.

54. At all material times herein, Schmidt was acting as the Chief Medical Examiner for Wayne County.

55. At all material times herein, ME was acting under color of state law pursuant to its customs, policies and procedures or practices.

56. At all material times, ME and Schmidt owed certain statutory duties to the Javizians pursuant to MCL 52.205.

57. At all material times herein, Defendants acted recklessly, negligently and/or with deliberate indifference when it practiced and /or permitted actions, policies and/or practices that resulted in constitutional and legal violations to the Javizians, in the following particulars:

    A. Failing to properly supervise and monitor the activities of employees including, but not limited to, Gupta, Sears, and others, so as to prevent the deprivation of rights of the next of kin to possession of the deceased bodies of their loved ones.

    B. Failing to ensure that its employees including, but not limited to, Gupta, Sears and others, made diligent efforts to ascertain the identity of the deceased's body and to immediately and as compassionately as possible notify the next of kin of the decedent's death.

    C. Failing to ensure that its employees including, but not limited to, Gupta, Sears and others, were competent, capable, and

11

    adequately educated and trained so as to avoid the deprivation of the rights of the next of kin.

  D. Failing to promulgate and/or enforce policies, procedures and practices to ensure employees' compliance with their statutorily mandated duties including but not limited to, the duty to ascertain the identity of the decedent and immediately and as compassionately as possible notify the next of kin of the decedent's death and location of the body, and to make diligent efforts to locate and notify the next of kin, and the duty to refrain from inappropriately, unnecessarily, and/or unlawfully mutilating a corpse.

  E. Retaining incapable, untrained or incompetent employees.

  F. Allowing employees and/or agents including but not limited to, Gupta, to conduct the unlawful mutilation and/or improper treatment of Gregory's body in derogation of the Javizians' clearly established rights guaranteed by the state and federal constitutions.

  G. Allowing employees and/or agent including, but not limited to, Gupta, to perform the unnecessary and unlawful removal of Gregory's organs and tissue in derogation of the Javizians' clearly established rights guaranteed by the state and federal constitutions.

  H. Failing to properly supervise, monitor and train its own employees in the proper procedure of death investigation and next of kin notification so as to avoid violations of constitutional and legal rights.

58. Defendants' acts and/or omissions were so reckless as to be in disregard of and/or deliberate indifference to a substantial likelihood that injuries would result.

59. Defendants' acts and/or omissions violated 42 USC Section 1983, when they deprived the Javizians of a constitutionally protected property right/interest in their deceased son's body for the purpose of burial.

60. As a direct and proximate result of Defendants' violation/deprivation of the Javizians' clearly established constitutional rights, the Javizians have endured mental anguish, severe emotional distress, humiliation, embarrassment, and suffering as a result of being denied the comfort of a prompt and proper burial of their only son without unnecessary mutilation of his body.

61. In addition, as a direct and proximate cause of the Defendants' extreme and outrageous, intentional or reckless conduct in failing to meet their duties outlined above, the Javizians have sustained both economic and non-economic damages, counseling expenses, physical pain, suffering, emotional distress, humiliation, embarrassment, depression, loss of enjoyment of life and other damages.

62. As a direct and proximate result of Defendants' violation/deprivation of the Javizians' clearly established constitutional rights, the Javizians claim compensatory and punitive damages pursuant to 42 USC §1983, together with interest, costs and attorney fees pursuant to 42 USC §1988.

## COUNT III

### **GROSS NEGLIGENCE – CARL J. SCHMIDT, M.D.**

63. Plaintiffs repeat and reallege paragraphs 1 through 62 as though each allegation was stated verbatim.

64. That all material times herein, Schmidt, individually, and as the Chief Medical Examiner for Wayne County, owed the following duties to the Javizians:

   A. To supervise the employees to ensure that they were competent, capable and trained with respect to their position(s).

   B. To ensure that all employees complied with their statutory duties under MCL 52.205.

   C. To promulgate, create, and/or enforce systems, procedures, policies and practices to ensure that all employees and/or agents of Defendants complied with their statutory duties under MCL 52.205.

   D. To refrain from allowing Defendants' employees and/or agents to perform unlawful or inappropriate mutilation of Gregory's body, in derogation of the Javizians' constitutionally protected rights.

   E. To make diligent efforts to ascertain the identity of a deceased's body and to immediately notify the next of kin.

   F. To refrain from performing or allowing Defendants' employees/agents to perform unnecessary autopsies and/or removal of organs.

65. The actions of the Defendants constituted a deprivation of a protected property right of the Javizians, as Schmidt's conduct was extreme and outrageous,

intentional or reckless and demonstrated a substantial lack of concern for whether an injury would result.

66. That Schmidt knew, or should have known from prior incidents resulting in Defendants' failure to timely identify a body or timely notify next of kin, that a flaw existed in the system and/or his employees were seriously lacking in competence, capability and/or training.

67. As a direct and proximate cause of the Schmidt's extreme and outrageous, intentional or reckless conduct in failing to meet the duties outlined above, the Javizians have endured mental anguish, severe emotional distress, humiliation, and embarrassment.

68. In addition, as a direct and proximate cause of the Schmidt's extreme and outrageous, intentional or reckless conduct in failing to meet their duties outlined above, the Javizians have sustained both economic and non-economic damages, counseling expenses, physical pain, suffering, emotional distress, humiliation, embarrassment, depression, loss of enjoyment of life and other damages.

### COUNT IV

#### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### CARL J. SCHMIDT AND WAYNE COUNTY MEDICAL EXAMINER

69. Plaintiffs repeat and reallege paragraphs 1 through 68 as though each allegation was stated verbatim.

15

70. At all times material herein, Schmidt and ME were required to conduct the duties of their office in compliance with MCL 52.205 and other state laws.

71. At all times material herein, Schmidt and ME were responsible for the proper supervision and disposition of deceased bodies and owed the following duties to the Javizians:

    A. To ensure that the employees employed by the Defendants were competent, capable, and current with regard to their position(s).

    B. To refrain from hiring incompetent, incapable, and non-current employees.

    C. To monitor the performance of the employees employed by the Defendants to ensure that they were competent, capable, and current with regard to their position(s).

    D. To train and educate the employees employed by Defendants to ensure that they were competent, capable, and current with regard to their position(s).

    E. To supervise the employees employed by the Defendant to ensure that they were competent, capable, and current with regard to their position(s).

    F. To create, promulgate and monitor all internal policies, procedures, practices and systems to ensure that employees employed by Defendants are able to meet their statutory duties.

72. Schmidt and ME's failure to identify Gregory's body within a reasonable time such that his body remained in the morgue for 22 days, decomposing into a state of almost non-recognition, constituted a negligent infliction of emotional distress upon the Javizians.

73. Schmidt and ME's failure to make diligent efforts to identify Gregory's next of kin, when Gregory's body was found with a wallet containing his driver's license and social security card, constituted a negligent infliction of emotional distress upon Javizians.

74. Schmidt and ME knew or should have known that their actions and/or omissions would cause any reasonable person mental anguish and extreme emotional distress and that such actions and omissions constitute reckless disregard for the welfare of Wayne County's citizenry.

75. That as a direct and proximate cause of Schmidt and ME's extreme and outrageous, intentional or reckless conduct in failing to meet the duties outlined above, the Javizians have endured mental anguish, severe emotional distress, humiliation, and embarrassment.

76. In addition, as a direct and proximate cause of the Schmidt and ME's extreme and outrageous, intentional or reckless conduct in failing to meet their duties outlined above, the Javizians have sustained both economic and non-economic damages, counseling expenses, physical pain, suffering, emotional distress, humiliation, embarrassment, depression, loss of enjoyment of life and other damages in excess of $75,000.00.

## **DAMAGES/RELIEF REQUESTED**

WHEREFORE, Plaintiffs, Charles Garry Javizian and Patricia Javizian, respectfully request that this Honorable Court enter the following legal and equitable relief:

A. Compensatory damages in an amount in excess of $75,000.00;

B. Exemplary damages in an amount in excess of $75,000.00;

C. Punitive damages in an amount in excess of $75,000.00;

D. Interest, costs and actual attorney fees; and

E. Such other and further legal and/or equitable relief as the Court shall deem just and appropriate.

Respectfully submitted,

SCHWARTZ LAW FIRM, P.C.

By: /s/ Mary A. Mahoney
Attorney for Plaintiffs
37887 West Twelve Mile Road
Farmington Hills, Michigan  48331
(248) 553-9400
mmahoney@schwartzlawfirmpc.com
(P41568)

Dated:  August 2, 2018

## **PLAINTIFF'S JURY DEMAND**

NOW COMES Plaintiffs, Charles Garry Javizian and Patricia Javizian, by and through their attorneys, Schwartz Law Firm, P.C., and hereby demand a trial by jury of the within cause.

                              Respectfully submitted,

                              SCHWARTZ LAW FIRM, P.C.

                              By:     /s/ Mary A. Mahoney
                                         Attorney for Plaintiffs
                                         37887 West Twelve Mile Road
                                         Farmington Hills, Michigan  48331
                                         (248) 553-9400
                                         mmahoney@schwartzlawfirmpc.com
Dated:  August 2, 2018                  (P41568)